STATE OF NEBRASKA, APPELLEE, V. RODRIGO ALBERTO
ORTEGA, ALSO KNOWN AS RODRIGO
ALBERTO GARCIA, APPELLANT.

___ N.W.2d ___

Filed February 20, 2015.    No. S-14-185.

1. **Attorney Fees: Appeal and Error.** When attorney fees are authorized, the trial
   court exercises its discretion in setting the amount of the fee, which ruling an
   appellate court will not disturb on appeal unless the court abused its discretion.
2. **Pleas: Appeal and Error.** Prior to sentencing, the withdrawal of a plea forming
   the basis of a conviction is addressed to the discretion of the trial court, and its
   ruling will not be disturbed on appeal absent an abuse of that discretion.
3. **Sentences: Appeal and Error.** An appellate court will not disturb a sen-
   tence imposed within the statutory limits absent an abuse of discretion by the
   trial court.
4. **Affidavits: Attorney Fees.** By obtaining permission to proceed in forma pau-
   peris under Neb. Rev. Stat. § 25-2301.01 (Reissue 2008), a party is not granted
   the payment of his or her attorney fees. Attorney fees are not the type of fees and
   costs contemplated by the in forma pauperis statutes.
5. **Right to Counsel: Attorney Fees.** When counsel is appointed to represent an
   indigent misdemeanor defendant pursuant to Neb. Rev. Stat. § 29-3906 (Reissue
   2008), an application for attorney fees must be made to the appointing court.
6. **Appeal and Error.** Appellate courts do not generally consider arguments and
   theories raised for the first time on appeal.
7. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance
   of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80
   L. Ed. 2d 674 (1984), the defendant must show that counsel's performance
   was deficient and that this deficient performance actually prejudiced his or
   her defense.
8. **Effectiveness of Counsel: Records: Appeal and Error.** Claims of ineffective
   assistance of counsel raised for the first time on direct appeal do not require
   dismissal ipso facto; the determining factor is whether the record is sufficient to
   adequately review the question.
9. **Pleas.** After the entry of a plea of guilty or no contest, but before sentencing, a
   court, in its discretion, may allow a defendant to withdraw his or her plea for any
   fair and just reason, provided that the prosecution has not been or would not be
   substantially prejudiced by its reliance on the plea entered.
10. **Pleas: Appeal and Error.** The right to withdraw a plea previously entered is
    not absolute, and, in the absence of an abuse of discretion on the part of the trial
    court, refusal to allow a defendant's withdrawal of a plea will not be disturbed
    on appeal.
11. **Pleas: Proof.** The burden is on the defendant to establish by clear and convincing
    evidence the grounds for withdrawal of a plea.
12. **Pleas.** To support a finding that a plea of guilty has been entered freely, intel-
    ligently, voluntarily, and understandingly, a court must inform a defendant
    concerning (1) the nature of the charge, (2) the right to assistance of counsel,

(3) the right to confront witnesses against the defendant, (4) the right to a jury trial, and (5) the privilege against self-incrimination. The record must also establish a factual basis for the plea and that the defendant knew the range of penalties for the crime charged.

Appeal from the District Court for Dakota County, Paul J. Vaughan, Judge, on appeal thereto from the County Court for Dakota County, Kurt Rager, Judge. Judgment of District Court affirmed in part, and in part vacated.

Randy S. Hisey and Zachary S. Hindman, of Bikakis, Mayne, Arneson, Hindman & Hisey, for appellant.

Jon Bruning, Attorney General, and Austin N. Relph for appellee.

Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Cassel, J.

## INTRODUCTION

After Rodrigo Alberto Ortega, also known as Rodrigo Alberto Garcia, pled guilty to three misdemeanor charges in the county court and was sentenced, he first appealed to the district court. After the district court affirmed, he filed a second appeal to the Nebraska Court of Appeals. In an order authorizing Ortega to proceed in forma pauperis on the second appeal, the district court intended to deny payment of attorney fees beyond the first appeal. Before this court, Ortega primarily attacks this purported denial of attorney fees. But we conclude that payment of attorney fees was not denied, because the district court was not the proper court to address the issue and no application for payment was made pursuant to the statutory procedure. Thus, to the extent that the order may be construed as addressing attorney fees, we vacate it. Finding no merit to Ortega's other claims regarding denial of permission to withdraw his guilty pleas and allegedly excessive sentences, we otherwise affirm.

## BACKGROUND

After Ortega's vehicle was stopped by police and he was arrested, Ortega was charged in the county court with five

counts. At the time of the stop, the police officers were responding to a complaint of a suspicious vehicle. Upon arrival, an officer observed Ortega's vehicle stopped in the center of the roadway. During the stop, Ortega repeatedly disregarded the officer's commands. Ultimately, a physical altercation ensued, and multiple officers were required to take Ortega into custody.

At arraignment, the county court informed Ortega of the charges and asked him whether he wished to request counsel at public expense. Ortega replied that he "would like to proceed without [counsel]." The court immediately asked Ortega, "Do you understand the Court would appoint an attorney for you at public expense if you could not afford one?" Ortega responded, "Yes, I do." In response to further inquiries, Ortega confirmed that he understood that counsel could be of assistance to him and that no one had made any threats or promises to persuade him to proceed without counsel. And he further confirmed that he was not under the influence of alcohol or drugs. The court pronounced its conclusion that Ortega had knowingly, intelligently, and voluntarily waived the right to counsel, and it cautioned Ortega to "let the Court know right away" if he changed his mind.

The county court next inquired whether a plea agreement had been made. The State responded that there was no plea agreement. The court questioned Ortega as to his knowledge of the possible pleas and their effect upon his rights, and Ortega confirmed his understanding. The court further informed Ortega of the potential sentences and the possibility that future convictions could be enhanced. And Ortega again confirmed that he was not under the influence of alcohol or drugs. Ortega pled guilty to count 1, resisting arrest; count 3, driving during revocation or impoundment; and count 4, no operator's license, nonresident. The State dismissed count 2, obstructing a peace officer, and count 5, driving left of center. The court determined that Ortega had entered his pleas knowingly, voluntarily, and intelligently, and it found him guilty.

The county court continued the matter for sentencing and ordered the preparation of a presentence investigation report. Several days later, Ortega filed an "Inmate Request Form"

seeking to withdraw his guilty pleas and to stop the prepara-
tion of the presentence investigation report. As grounds for
withdrawal, Ortega alleged that he was under the influence
of drugs when he entered his pleas, because he was arraigned
only 3 days after his arrest.

Upon its own motion, the county court appointed Ortega
counsel from the public defender's office. Despite the appoint-
ment of counsel, Ortega personally filed a second inmate
request form seeking to withdraw his guilty pleas. He again
claimed that he was under the influence of drugs when he
entered his pleas, and he further alleged that he was suf-
fering from depression and stress and that the proceeding
was "to[o] fast." Ortega claimed that he had requested his
appointed counsel withdraw his pleas but that counsel could
not help him.

Ortega's appointed counsel moved to withdraw and alleged
that Ortega no longer desired his representation. Counsel
attached a letter from Ortega, stating: "I'm gonna ask you
to stop doing anything you [are] doing for me. You are not
the lawyer I want to defend me. You are polluted and I have
request[ed] and sen[t] a letter to the judge to court appoint me
a different lawyer."

A hearing was held on the motion to withdraw, and Ortega
confirmed that he no longer wanted to be represented by his
appointed counsel. He explained that he did not agree with
counsel "on a lot of things" and that whenever he asked coun-
sel to do something, counsel would "always go a different
way." However, Ortega requested that the county court appoint
another attorney to represent him. The court overruled the
motion, concluding that no grounds had been established to
permit the withdrawal.

Ortega's appointed counsel subsequently filed a second
motion to withdraw, alleging that Ortega was refusing to speak
with him and that there had been a breakdown of communi-
cation and trust. One day later, Ortega filed a letter detailing
"all the legal reasons" to permit the withdrawal. He stated
that he desired an "appropri[a]te" or "ade[q]uate" defense, and
he claimed that his relationship with counsel was broken and
could not be fixed.

A second hearing was conducted, and appointed counsel explained that the relationship between himself and Ortega had reached such a "caustic" level that there was no "real ability" for him to represent Ortega. Ortega again confirmed that he wanted counsel to withdraw. However, the county court overruled the motion, again finding that good cause to permit the withdrawal had not been shown.

After denying the withdrawal, the county court proceeded to sentencing. Rather than presenting an argument, appointed counsel stated that Ortega had asked him to refrain from making any comments. The court asked Ortega if there was anything he wanted to say, and Ortega replied that he wanted counsel to withdraw. The court responded that at that point, Ortega was effectively proceeding pro se. Ortega asserted that when he pled guilty, he was depressed, under a "lot of stress," and without the benefit of counsel. And he claimed that he had made multiple attempts to withdraw his pleas, but counsel refused to file an appropriate motion.

The county court sentenced Ortega to 250 days' imprisonment on the resisting arrest conviction, 60 days' imprisonment on the driving during revocation or impoundment conviction, and 30 days' imprisonment on the no operator's license, nonresident, conviction. Each sentence was ordered to run consecutively, and Ortega was given credit for 65 days served.

Ortega, represented by new counsel, filed a timely notice of appeal to the district court. On appeal, Ortega alleged that his guilty pleas were not entered knowingly, voluntarily, and intelligently and that his sentences were unreasonable. But the district court observed that at the time Ortega entered his pleas, he had been informed of the charges, his rights, and the consequences of a guilty plea. And it determined that his sentences were within the statutory guidelines. It therefore affirmed his convictions and sentences.

Ortega filed a timely notice of appeal to the Court of Appeals, along with a poverty affidavit and a motion to proceed in forma pauperis. The district court granted the motion to proceed in forma pauperis, but in its order doing so, it struck out the provision stating that Ortega's "fees" would be paid

by Dakota County, Nebraska. Thus, the relevant portion of the order read, "IT IS ORDERED: that the defendant is allowed to proceed with his appeal in forma pauperis and that the ~~fees and~~ costs of said appeal shall be paid by Dakota County."

Based upon the denial of Ortega's "fees," his appellate counsel filed a motion to withdraw in the Court of Appeals. Appellate counsel alleged that they had been appointed to represent Ortega in his appeal and that, pursuant to his direction, they had been required to file a notice of appeal to the Court of Appeals. However, they claimed that the district court had denied them payment by striking out the term "fees" from the order in forma pauperis. The Court of Appeals overruled the motion, and we moved the case to our docket pursuant to statutory authority.[1]

Ortega's appellate counsel filed a second motion to withdraw in this court. They explained that after the denial of the prior motion, they filed a second motion to proceed in forma pauperis in the district court. They also stated that the district court indicated in an e-mail that it did not intend to rule on the motion, because it believed that it did not have jurisdiction. According to Ortega's appellate counsel, the court further explained that it did not believe Ortega had the right to appointed counsel after his first appeal to the district court. However, the above actions do not appear in the record received from the district court, and we do not have any transcript including either the second motion or any ruling on the motion. We overruled the second motion to withdraw without prejudice and permitted appellate counsel to brief the issue of attorney fees.

After briefing was completed, we heard oral arguments. At oral argument, appellate counsel reported that the district court had later ruled on the second motion, confirming its intention to deny attorney fees, and counsel sought leave to file a supplemental transcript. We now overrule this request as moot. As discussed in greater detail below, the granting of counsel's request would not affect the result of our analysis.

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

## ASSIGNMENTS OF ERROR

Ortega assigns, consolidated and reordered, that the district court erred in (1) ordering that his attorney fees would not be paid at public expense; (2) rejecting his claim that his guilty pleas were not entered knowingly, voluntarily, and intelligently; and (3) rejecting his claim that his sentences were unreasonable.

## STANDARD OF REVIEW

[1] When attorney fees are authorized, the trial court exercises its discretion in setting the amount of the fee, which ruling an appellate court will not disturb on appeal unless the court abused its discretion.[2]

[2] Prior to sentencing, the withdrawal of a plea forming the basis of a conviction is addressed to the discretion of the trial court, and its ruling will not be disturbed on appeal absent an abuse of that discretion.[3]

[3] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.[4]

## ANALYSIS

We begin our analysis with the primary issue of appellate counsel's attorney fees. We then turn to Ortega's remaining claims.

### ATTORNEY FEES

Ortega argues that pursuant to Neb. Ct. R. App. P. § 2-103, his appellate counsel were required to represent him before the Court of Appeals, unless permitted to withdraw. And he claims that by striking out the term "fees" from the order in forma pauperis, the district court denied his appellate counsel payment for their representation.

We acknowledge, as did the State in its brief, that the district court, in striking out the term "fees" from the order in forma

---

[2] *In re Guardianship of Brydon P.*, 286 Neb. 661, 838 N.W.2d 262 (2013).

[3] *State v. Williams*, 276 Neb. 716, 757 N.W.2d 187 (2008).

[4] *State v. McGuire*, 286 Neb. 494, 837 N.W.2d 767 (2013).

pauperis, intended to deny the payment of attorney fees. But the district court's belief that it could deny Ortega's attorney fees through the order in forma pauperis was flawed. Thus, this assigned error evidences several misconceptions.

The first, and most fundamental, misconception is the notion that the striking of the words "fees and" from the order granting leave to proceed in forma pauperis affected the right to or amount of any attorney fees for Ortega's court-appointed counsel.

The district court's attempt to deny attorney fees by means of an interlineation within the order in forma pauperis failed for two reasons. First, the court conflated the "fees" regarding permission to proceed in forma pauperis with fees for a court-appointed attorney. Second, the determination of fees is regulated by a separate statutory procedure, which directs the question in the first instance to the appointing court. In this instance, that means the county court. We explain each reason in more detail.

Both civil and criminal proceedings in forma pauperis are governed by Neb. Rev. Stat. § 25-2301 et seq. (Reissue 2008).[5] Section 25-2301(2) sets forth that "[i]n forma pauperis means the permission given by the court for a party to proceed without prepayment of fees and costs or security." However, the "fees" specified in § 25-2301(2) do not include a party's attorney fees.

In considering § 25-2301.02, we have observed that the fees, costs, or security referred to are those customarily required to docket an appeal.[6] And the statutes delineate various specific fees, costs, or security that a party is excused from paying by proceeding in forma pauperis, including the service of all necessary writs, process, and proceedings[7]; the subpoena of any witnesses that have material and necessary evidence[8]; the

---

[5] See *Glass v. Kenney*, 268 Neb. 704, 687 N.W.2d 907 (2004).

[6] See *id*.

[7] § 25-2302.

[8] § 25-2304.

preparation of the record on appeal[9]; and the printing of appellate briefs.[10]

[4] But the statutes governing proceedings in forma pauperis make no mention of a party's attorney fees. By obtaining permission to proceed in forma pauperis under § 25-2301.01, a party is not granted the payment of his or her attorney fees. Attorney fees are not the type of "fees and costs" contemplated by the in forma pauperis statutes.

[5] Rather, for appointed counsel to obtain payment for his or her representation of an indigent criminal defendant, a separate application must be made to the appropriate court.[11] When counsel is appointed to represent an indigent misdemeanor defendant pursuant to § 29-3906, an application for attorney fees must be made to the "appointing court." Although no order appointing appellate counsel appears within the record, Ortega's notice of appeal from the county court to the district court was filed by appellate counsel. Thus, it is apparent that they were appointed by the county court.

Because the county court was the appointing court in this case and the district court functioned purely as an intermediate appellate court,[12] the county court was and remains the appropriate court for an application for attorney fees. But the record does not disclose any application by appellate counsel for the payment of their attorney fees pursuant to the statutory procedure. Thus, the propriety of appellate counsel's fees was not an issue properly before the district court.

The payment of appellate counsel's fees was an issue to be determined, in the first instance, by the county court. And an application for court-appointed attorney fees would be appropriately addressed to the county court, after the district court acts upon our mandate and issues its mandate to the county court. "The court, upon hearing the application, shall fix reasonable expenses and fees, and the county board shall

---

[9] §§ 25-2305 and 25-2306.

[10] § 25-2307.

[11] See Neb. Rev. Stat. §§ 29-3905 and 29-3906 (Reissue 2008).

[12] See *State v. Boham*, 233 Neb. 679, 447 N.W.2d 485 (1989).

allow payment to counsel in the full amount determined by the court."[13] To the extent that the district court purported to deny attorney fees for Ortega's court-appointed counsel, we vacate its order. At this point, there is no order effectively granting or denying attorney fees for Ortega's appellate counsel.

However, in order to assist the lower courts, we briefly address Ortega's argument regarding § 2-103 of our appellate rules of procedure. That rule states:

> (A) Representation on Appeal. Counsel appointed in district court to represent a defendant in a criminal case other than a postconviction action shall, upon request by the defendant after judgment, file a notice of appeal and continue to represent the defendant unless permitted to withdraw by this court.

> (B) Motion to Withdraw. A motion of court-appointed counsel for permission to withdraw shall state the reason for the request, and shall be served upon opposing counsel by regular mail and on the defendant by certified mail to the defendant's last-known address. An original and one copy of the motion and proof of service shall be filed with the Supreme Court Clerk.

Ortega claims that pursuant to § 2-103, appellate counsel were obligated to continue the representation beyond his first appeal to the district court. But Ortega's reliance upon § 2-103 is unfounded.

As Ortega's counsel forthrightly conceded at oral argument, § 2-103 does not create any substantive right to counsel at public expense. Those rights flow from our federal and state Constitutions.[14] In some instances, a statute may also provide for appointment of counsel at public expense.[15]

Rather, § 2-103 ensures orderly proceedings by mandating that after an appeal is perfected, counsel in the court below is deemed as counsel in the appellate court until a withdrawal

---

[13] § 29-3905.

[14] See, *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963); *State v. Hughan*, 13 Neb. App. 862, 703 N.W.2d 263 (2005).

[15] See §§ 29-3905 and 29-3906. See, also, Neb. Rev. Stat. § 29-3004 (Reissue 2008).

of appearance has been filed. And counsel in any criminal case pending in an appellate court may withdraw only after obtaining permission of the appellate court.[16] A recent decision of the Court of Appeals illustrates the disruption to orderly procedure that may flow from counsel's failure to make the appropriate motion to withdraw.[17]

In the case before us, counsel complied with § 2-103 and filed an appropriate motion to withdraw. Indeed, counsel did so twice. But because of the district court's irregular order purporting to deny attorney fees, both motions were overruled. Instead, we directed counsel to address the matter in briefing, and counsel did so. These circumstances should be considered when the county court addresses a proper application for attorney fees. Having disposed of the primary matter before us, we now turn to the issues pertaining to Ortega's convictions and sentences.

## Withdrawal of Pleas

Ortega assigns that the district court erred in rejecting his claim that his guilty pleas were not entered knowingly, voluntarily, and intelligently. He argues that at the time of his pleas, he was under the influence of drugs and was suffering from stress and depression. And he claims that any failure to preserve this issue for appeal was the result of ineffective assistance of counsel.

[6] This assignment of error raises a needlessly complex procedural question as to how the issue should be addressed in this appeal. In the county court, Ortega's appointed counsel never filed a motion to withdraw Ortega's guilty pleas. And we have stated that appellate courts do not generally consider arguments and theories raised for the first time on appeal.[18] In apparent recognition of this principle, Ortega asserts that any failure to raise this issue before the county court was ineffective assistance of counsel.

---

[16] See § 2-103(1). See, also, Neb. Ct. R. App. P. § 2-101(F)(1) (rev. 2015).

[17] See *State v. Agok*, 22 Neb. App. 536, 857 N.W.2d 72 (2014).

[18] See *Bedore v. Ranch Oil Co.*, 282 Neb. 553, 805 N.W.2d 68 (2011).

But Ortega himself made numerous requests to the county court to withdraw his pleas. He filed two inmate request forms in the county court seeking to withdraw his pleas. And at sentencing, he asserted that he had been under the influence of stress and depression when he pleaded guilty and he referred to his prior efforts to withdraw his pleas. However, these requests were never explicitly ruled upon, and the court ultimately sentenced Ortega.

Thus, we are presented with Ortega's claim that his counsel was ineffective for failing to make a motion which Ortega himself made on multiple occasions, along with the additional complication that the county court never explicitly addressed Ortega's requests. To resolve this quandary, we consider the sentencing of Ortega as a denial of his requests. In his argument at the sentencing hearing, Ortega renewed his assertions that he did not make his pleas knowingly and intelligently; yet, the court proceeded to impose its sentences. We therefore consider the issue as properly preserved for appellate review.

[7,8] However, we decline to address any claim of ineffective assistance of counsel predicated on this issue in this subsequent appeal. To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*,[19] the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense.[20] Claims of ineffective assistance of counsel raised for the first time on direct appeal do not require dismissal ipso facto; the determining factor is whether the record is sufficient to adequately review the question.[21]

[9] The record is insufficient to address Ortega's claim of ineffective assistance of counsel. The record is silent as to counsel's motivations in failing to bring a motion to withdraw Ortega's pleas. Our case law provides that after the entry of a plea of guilty or no contest, but before sentencing, a court, in

---

[19] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[20] *State v. Sellers*, 279 Neb. 220, 777 N.W.2d 779 (2010).

[21] *Id.*

its discretion, may allow a defendant to withdraw his or her plea for any fair and just reason, provided that the prosecution has not been or would not be substantially prejudiced by its reliance on the plea entered.[22] It is possible that counsel believed that no fair and just reason existed for the withdrawal of Ortega's pleas and that the refusal to bring the motion was a strategic decision. Without a more complete record, we decline to address the issue.

[10,11] We now turn to the county court's denial of Ortega's requests to withdraw his pleas on the grounds espoused by Ortega. We have held that the right to withdraw a plea previously entered is not absolute, and, in the absence of an abuse of discretion on the part of the trial court, refusal to allow a defendant's withdrawal of a plea will not be disturbed on appeal.[23] The burden is on the defendant to establish by clear and convincing evidence the grounds for withdrawal of a plea.[24]

[12] We find no merit to Ortega's assertion that his pleas were not entered knowingly, voluntarily, and intelligently on the basis that he was under the influence of drugs, stress, or depression. The record affirmatively establishes that Ortega understood the nature of the plea hearing and the effect of his guilty pleas. To support a finding that a plea of guilty has been entered freely, intelligently, voluntarily, and understandingly, a court must inform a defendant concerning (1) the nature of the charge, (2) the right to assistance of counsel, (3) the right to confront witnesses against the defendant, (4) the right to a jury trial, and (5) the privilege against self-incrimination. The record must also establish a factual basis for the plea and that the defendant knew the range of penalties for the crime charged.[25]

The county court complied with all of these requirements. Ortega confirmed his understanding of the charges, the right

---

[22] See *Williams, supra* note 3.

[23] See *id*.

[24] *Id*.

[25] See *State v. Schneider*, 263 Neb. 318, 640 N.W.2d 8 (2002).

to assistance of counsel, the effect of a guilty plea upon his constitutional rights, and the possible penalties. And on two occasions, he confirmed that he was not under the influence of drugs. Thus, Ortega's assertion that his pleas were not entered knowingly, voluntarily, and intelligently is affirmatively refuted by the record.

Ortega attempts to compare this case to *State v. Schurman*,[26] in which the Court of Appeals concluded that the defendant should have been permitted to withdraw his pleas on the bases that the defendant exhibited confusion during the plea hearing and was suffering from bipolar disorder and hearing loss. However, in contrast to *Schurman*, Ortega did not exhibit any confusion during the plea hearing. Ortega responded appropriately to each of the county court's questions, and he confirmed his understanding of the proceeding on multiple occasions. Thus, we disagree that *Schurman* supports Ortega's assigned error.

We find no abuse of discretion in the county court's refusal to permit the withdrawal of Ortega's pleas. The record established that Ortega's bare assertions of impairment were unfounded. This assignment of error is without merit.

## Excessive Sentences

Ortega asserts that his sentences were unreasonable, because they were near the maximum permitted by the statutory guidelines. He further asserts that the circumstances of the crimes did not warrant the sentences imposed.

Ortega's sentences were within the statutory guidelines. The principles of law governing review of sentences imposed in criminal cases are so familiar that we need not repeat them here.[27] Based upon the relevant sentencing factors, we do not find Ortega's sentences to be an abuse of discretion. Ortega had an extensive prior criminal history, including several convictions similar to those in the present case. He had previous convictions for no valid operator's license; driving under

---

[26] *State v. Schurman*, 17 Neb. App. 431, 762 N.W.2d 337 (2009).

[27] See *State v. Tolbert*, 288 Neb. 732, 851 N.W.2d 74 (2014).

suspension; driving during revocation; refusing to comply with the orders of police; and hindering, delaying, or interrupting an arrest. Ortega's criminal history demonstrates a continued disregard for the lawful authority of police and the laws governing the operation of motor vehicles in the State of Nebraska. This assignment clearly lacks merit.

## CONCLUSION

We find no merit to Ortega's assertion that the district court's order in forma pauperis had the legal effect of denying his appellate counsel payment for their representation. Further, the district court was not the proper court to address the issue of attorney fees. To the extent that the district court's order granting leave to proceed in forma pauperis may be understood as addressing attorney fees, we vacate the order. As to Ortega's other claims, the record establishes that his guilty pleas were entered knowingly, voluntarily, and intelligently and that his sentences were not excessive. We affirm the judgment of the district court, which affirmed Ortega's convictions and sentences.

Affirmed in part, and in part vacated.

Heavican, C.J., participating on briefs.

––––––––––––––

State of Nebraska, appellee, v.
Aron D. Wells, Sr., appellant.
___ N.W.2d ___

Filed February 20, 2015.    No. S-14-331.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.

2. **Convictions: Appeal and Error.** In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and